NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.O. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-LDP1, | : : : : : : : : | Civil Action No. 10-5093 (MLC)  MEMORANDUM OPINION |
| Plaintiff, | : : | |
| v. | : : | |
| COBALT REALTY, LLC, et al., | : : | |
| Defendants. | : : | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Defendants Cobalt Realty, LLC, et al.s' ("Defendants") motion to enforce the parties' settlement agreement and release [Docket Entry No. 75]. Plaintiff U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-LDP1 ("Plaintiff") opposes Defendants' motion [Docket Entry No. 78]. The Court has fully reviewed all arguments made and evidence submitted in support of and in opposition to Defendants' motion. For the reasons set forth more fully below, Defendants' motion to enforce the parties' settlement agreement and release is GRANTED.

**I.    Background and Procedural History**

On or about October 22, 2004 Defendant Cobalt Realty, LLC and the principal thereof, Defendant Steve Kogut, purchased a commercial property ("Property") with a mortgage of

$21,250,000.00 originally loaned by Eurohypo AG, New York Branch ("Eurohypo"). Defendants also entered into an Environmental Indemnity Agreement in favor of Eurohypo. After several assignments, the loan is now held by Plaintiff, who sought to foreclose upon the mortgage in October of 2010, after Defendant Cobalt defaulted on the loan.  On October 28, 2010 the District Court granted Plaintiff's request to appoint a receiver and so appointed Jonathan B. Schultz of Onyx Equities, LLC ("Receiver").  On June 28, 2011, the Receiver moved for injunctive relief seeking to void a transfer of theater equipment from the Property's tenant, Destina Theatre Management, LCC ("Destina") to Twilight Theatres, LLC ("Twilight"), arguing that it was a fraudulent transfer.  Twilight was an affiliate of Defendant Cobalt and owned by Defendant Kogut.  However, the parties continued with settlement discussions and on July 12, 2011 announced on the record in a telephone conference with the District Judge that they "have reached a global settlement" in the action. [Docket Entry No. 54]  (the "7/12/11 Tr.").  The terms of settlement were placed on the record as follows:

> "[W]hat has essentially been agreed to is that the defendant, Cobalt has agreed to withdraw its opposition to the summary judgment motion which is currently pending before Your Honor.  We'll agree to consent to a sale of the property by a receiver which we'll talk about in a moment.  In exchange for that consideration, the bank, my client, the lenders, have agreed to give a broad general release to Mr. Steve Kogut, who is the principal of Cobalt and was a defendant in this action.  So, that is being given to Mr. Kogut upon the foreclosure sale of the property."

7/12/11 Tr. at 3:12-23.

Subsequent to the conference, Plaintiff's prior counsel, Mark Lichtenstein, Esq., drafted a proposed Settlement Agreement and Release, which provided in pertinent part as follows:

> 6. **GENERAL RELEASE**.  It is the express intent of the Parties to fully extinguish each and every claim brought by, or that could have been brought by, Lender or Kogut, in the Action relating in any way to subject matter of or any transaction or events described in or forming the basis for the Action.

*Defendants' Brief in Support,* Docket Entry No. 75-3, *6 (emphasis omitted).

In August 2011, a new loan servicer took over for Plaintiff in this action. Thereafter, Plaintiff's counsel sought information on a Gulf Insurance Group Pollution Legal Environmental Insurance Policy, which Defendants were required to maintain pursuant to the terms of the Loan Agreement. At issue is whether the Environmental Indemnity Agreement was intended by the parties to have been included in the general release of claims.

## II.     Argument

Through its motion, Defendants ask the Court to enforce the parties' settlement agreement. As an initial matter, Defendants argue that the parties entered into a valid and enforceable settlement agreement and cite case law generally holding that where the parties agree on the essential terms of a contract, courts will not look into the adequacy of the consideration provided and will not find an unenforceable contract where only memorialization of the agreement remained. *Defendants' Brief in Support,* Docket Entry No. 75-3, *10. Furthermore, Defendants argue that a settlement freely entered into should be enforced absent fraud or other compelling circumstances. *Id.*

Defendants argue that a settlement was reached in this matter, with the terms of same having been placed on the record, and "a Settlement Agreement and Release encompassing the terms set forth on the record was prepared by plaintiff's counsel." *Id.* at *11. Defendants argue that the terms of the settlement agreement were "unambiguously clear" and certain. *Id.* Moreover, Defendants argue that "[t]he Environmental Indemnity Agreement was not excluded from the terms of the Settlement Agreement and Release" and that, indeed, "the settlement terms specifically apply to 'each and every claim' that [P]laintiff could have brought against Kogut." *Id.*

3

Defendants contend that Plaintiff's position that it never intended to release Kogut from the Environmental Indemnity Agreement is not a basis to find the settlement agreement invalid.[1]

Defendants further argue that Plaintiff's counsel "assured defendants that there were no issues with the settlement and that additional time was required merely for the new servicer to review the settlement terms." *Id.* at *7.

Plaintiff opposes Defendants motion and maintains that no contract existed and that settlement was purely potential. Plaintiff's argument is twofold. First, Plaintiff argues that there was no meeting of the minds regarding the terms essential to settlement and that, therefore, no contract could have been formed. In support, Plaintiff argues that at the very least there was a misunderstanding, and that the Environmental Indemnity Agreement cannot be released by its own terms. Second, even assuming *arguendo* that a contract existed, Plaintiff contends that Plaintiff's counsel did not have the requisite authority to enter into such an agreement with Defendants.

Plaintiff cites case law holding that where it appears that an agreement is incomplete or there is an absence of "mutuality of accord" then the agreement is not enforceable. *Plaintiff's Brief in Opposition,* Docket Entry No. 78, *12 (internal citation omitted). Plaintiff further argues that the parties' objective manifestations of intent are evaluated to determine whether there was a meeting of the minds. Plaintiff submits that a summary judgment standard be employed in this context to see whether a genuine issue of material fact exists which prevents the agreement from being enforceable. *Id.* at *13-14.

Plaintiff argues that no meeting of the mind exists between the parties. Indeed, Plaintiff points to the parties' "vehement and opposing positions" in the instant motion as illustrative

---

[1] Defendants made the additional argument that the transfer of the theater equipment from Destina to Twilight was not fraudulent. However, as Plaintiff correctly notes in its opposition, that issue is not presently before the Court and shall not be considered at this time.

evidence that there clearly was no understanding between the parties at the time of the agreement. Plaintiff claims that "the elemental question of what was or was not being released – the very essence of any settlement – is disputed by the parties" and therefore, "it is clear that no settlement exists[.]" *Id.* at *14. Plaintiff further argues that the potential settlement was subject at all times to written documentation and that because the parties "could not and cannot agree as to the scope of the potential release…Defendants cannot meet their burden of proving the existence of an enforceable settlement." *Id.* at *15.

Additionally, Plaintiff counters Defendants' argument that the Environmental Indemnity Agreement was never excluded from the terms of settlement by arguing that it was never placed at issue in the Foreclosure Action because "neither the Complaint, nor any of the pleadings" mention it. *Id.*   Further, Plaintiff argues that, by its own terms, the Environmental Indemnity Agreement expressly states that it "survives any settlement of the Borrower and Kogut's obligations under the Loan Documents." *Id.*   Plaintiff quotes the following language from the Environmental Indemnity Agreement:

> SURVIVAL.   The obligations and liabilities of Indemnitor under this Agreement shall fully survive indefinitely notwithstanding any termination, satisfaction, assignment, entry of a judgment of foreclosure, exercise of any power or sale, or delivery of a deed in lieu of foreclosure of the Mortgage.

*Id.* at *16.

Plaintiff further claims that there was no mention by either party of the release of the Environmental Indemnity Agreement until October 2011, thereby arguing that it was clearly never contemplated by any potential settlement. Plaintiff denies Defendants' claim that Plaintiff's counsel assured them that there were no issues by pointing to an email sent by Plaintiff's counsel,

"specifically stat[ing] that Plaintiff was working towards 'addressing any issues relating to the settlement.'" *Id.* at *18.

In the event that the Court should find a meeting of the minds, Plaintiff argues that Plaintiff's counsel did not have the requisite authority to enter into a settlement agreement with Defendants. Plaintiff contends that "[n]othing on the record in this matter demonstrates or suggests that Plaintiff's prior counsel had the authority, communicated to Defendants, to consummate a settlement that included a release of the Environmental Indemnity [Agreement]." *Id.* at *19. Plaintiff notes that Mr. Lichtenstein's email stated that the settlement draft was "Subject to Client Comment." *Id.* Plaintiff submits that this disclaimer illustrates the lack of authority given to Mr. Lichtenstein to consummate any settlement agreement.

Plaintiff submits that in light of the above, there was no meeting of the minds and therefore no enforceable settlement agreement was created and that Defendants' motion should be denied.

Defendants reply brief argues that "there can be no doubt that both parties manifested an express intent to release defendants, Cobalty (*sic*) Realty, LLC and Steve Kogut ("Kogut"), from any and all claims arising out of the Loan Documents." *Defendants' Reply Brief,* Docket Entry No. 83, *4. In response to Plaintiff's contention that the Complaint does not mention the Environmental Indemnity Agreement, Defendants maintain that "the Complaint filed by Plaintiff repeatedly references both the 'Loan Agreement' and the 'Loan Documents' and that "the Loan Agreement defines 'Loan Documents' as follows:

> **"Loan Documents"** shall mean, collectively, this Agreement, the Note, the Mortgage, the Assignment of Leases, the **Environmental Indemnity,** the Guaranty, the Assignment of Management Agreement as well as all other document now or hereafter executed and/or delivered in connection with the Loan.

*Id.* at *5 (emphasis in the original).

6

Therefore, Defendants argue that the Loan Documents were the basis for Plaintiff's "Action" as provided in paragraph 6 of the Settlement Agreement outlined above, and that the Environmental Indemnity Agreement did not need to be specifically mentioned, as it was encompassed by the term "Loan Documents." *Id.* at *6. In conclusion, Defendants submit that Plaintiff knew about the existence of the Environmental Indemnity Agreement and intended to give Mr. Kogut a "broad general release" including any potential liability under same.

Finally, Defendants address Plaintiff's contention that Plaintiff's prior counsel lacked authority to enter into a settlement agreement. Defendants cite case law holding that " an attorney is presumed to possess authority to act on behalf of the client…and the party asserting lack of authority must sustain 'a heavy burden to establish that [the] attorney acted without any kind of authority'[.]" *Id.* at *9 (citations and emphasis omitted). Defendants argue that there is no certification or declaration from Plaintiff or Mr. Lichtenstein claiming that he was without authority and that there is no reference that the settlement documents were subject to review by Plaintiff. *Id.* Lastly, Defendants point out that it has been approximately one and a half years since the settlement was reached and Plaintiff is only now alleging for the first time that there was no authority to enter into it. Therefore, Defendants request that the settlement be enforced.

### III.    Analysis

#### A.    Enforcement of the Settlement Agreement

A settlement agreement is a type of contract. *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003)). Consequently, courts look to state contract law when determining whether an enforceable settlement agreement has been reached. *See Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 527-28 (App. Div. 1985); *Excelsior Ins.*

*Co. v. Pennsbury Pain Ctr.*, 975 F.Supp. 342, 348-49 (D.N.J. 1996) (holding that "state law governs the construction and enforcement of settlement agreements in federal court.")

Under New Jersey state law, "[a]n agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into[,] and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (internal quotations omitted). Further, in New Jersey, there is a strong public policy favoring settlements. *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate*, 206 N.J. Super. at 528. Nevertheless, courts should not enforce "[a] settlement . . . 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" *Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App. Div. 1955)). However, the mere fact that a settlement agreement fails to "contain every possible contractual provision to cover every contingency" does not render it any less enforceable. *Id.* Indeed, "a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.*

Further, under New Jersey law, as long as "the parties orally agree on the essential terms," a contract is formed. *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, *3 (D.N.J. Sept. 24, 2007). This is true "'even though [the parties] contemplate the later execution of a formal document to memorialize their undertaking.'" *Id.* (quoting *United States v.*

8

*Lightman,* 988 F.Supp. 448, 459 (D.N.J. 1997).  "Indeed, as long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'" *Id.* (quoting *Lahue v. Pio Costa*, 263 N.J. Super 575, 596 (App. Div. 1993)).

Under these principles, it is clear that the parties in the instant litigation reached an enforceable settlement agreement.  The Court finds that the parties agreed on the essential and material terms of their settlement.  As noted above, the fact that their settlement agreement fails to "contain every possible contractual provision to cover every contingency" does not render it less enforceable.  *Bistricer*, 231 N.J. Super. at 147.  The Court finds that it was Plaintiff's prerogative to carve out an exception for the Environmental Indemnity Agreement, and the fact that Plaintiff failed to do so does not indicate a lack of mutual assent or result in their agreement being rendered unenforceable.  Plaintiff explicitly gave a broad general release to Kogut on the record without noting any reservations during the colloquy with the Court.  There was no suggestion that there was an issue subject to debate and the agreement remained only to be memorialized in writing.  Furthermore, Plaintiff's own complaint was brought pursuant to the "Loan Documents" and the Environmental Indemnity Agreement was included in that definition.  The Court shall not permit any "gaps left by the parties . . . [to] frustrate their intention to be bound."  *Id.*  As a result, the Court finds that the parties entered into an enforceable settlement agreement.

In addition, the Court finds Plaintiff's argument that counsel had no authority to enter into the settlement agreement to be without merit.  As Defendants correctly note, the burden to show that an attorney acted without authority is a heavy one and the Court finds that Plaintiff simply provides no adequate support for this assertion.

**IV.    Conclusion**

For the reasons set forth above, Defendants' motion to enforce the parties' settlement agreement and release is GRANTED.  An appropriate Order follows.

Dated: March 22, 2013

                                               s/Tonianne J. Bongiovanni
                                               **TONIANNE J. BONGIOVANNI**
                                               **UNITED STATES MAGISTRATE JUDGE**